```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
```
**CENTRAL DIVISION at LEXINGTON**

```
ELIZABETH B. ROSE              )
                               )
     Plaintiff,                )   Civil Action No. 5:06-151-JMH
                               )
                               )
v.                             )
                               )
                               )   MEMORANDUM OPINION & ORDER
CONTINENTAL CASUALTY COMPANY,  )
                               )
     Defendant.                )
                               )
```

                    \*\*     \*\*     \*\*     \*\*     \*\*

Plaintiff Elizabeth B. Rose ("Rose") filed this action seeking review of the denial of benefits under a long-term disability plan by Defendant Continental Casualty Company ("Continental"). The Court has reviewed the administrative record, which was filed by defendants on June 22, 2006. Rose subsequently filed a memorandum in opposition to the denial of benefits [Record No. 10]. Continental filed a response [Record No. 15], to which Rose replied [Record No. 16]. Fully briefed, this matter is now ripe for review.

### I. BACKGROUND

Rose was formerly employed as a psychotherapist and clinical social worker at The Medical Center Clinic, P.A. in Pensacola, Florida. On April 18, 1994, Rose filed a claim for long-term disability benefits due to chronic fatigue syndrome and chronic hepatitis. This claim was granted, and Rose was considered totally disabled during the twenty-four month period provided for in her

long-term disability policy (the "Policy")[1] that lasted from July 17, 1994 until July 16, 1996. Under the Policy, Rose would be considered totally disabled after that twenty-four month period if, "because of injury or sickness" she is "continuously unable to perform the duties of any occupation for which [she is] reasonably qualified by education, training or experience." Rose continued to receive long-term disability benefits until April 29, 2005, when the benefits on her claim for disability were terminated.

Pursuant to the Policy, Continental was the entity charged with judging the evidence and determining Rose's eligibility to continue receiving benefits. After Continental determined that

---

[1] The Policy provides in pertinent part:

   You are considered totally disabled and eligible for benefits:
>   During the first twenty-four months of Benefit Payments, if, because of injury or sickness, you are continuously unable to perform the essential and/or majority of duties of your occupation and you are not engaged in any other occupations for which you are reasonably qualified by education, training, or experience;

>   After the first twenty-four months of Benefit Payments, if, because of injury or sickness, you are continuously unable to perform the duties of any occupation for which you are reasonably qualified by education, training or experience.

Rose contends that there are differences between the first paragraph in the version of the Policy provided to her and the first paragraph in the version in the Administrative Record. Because Rose is not challenging the denial of benefits during that twenty-four month period, it is not at issue in this case and the discrepancy in the language of the Policy regarding that period is immaterial to Rose's challenge to her denial of benefits in 2005.

Rose was no longer eligible, she appealed the termination of her benefits, but her appeal was denied. Rose then filed the instant case under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, claiming that Continental acted arbitrarily and capriciously when it terminated her benefits. *See* 29 U.S.C. § 1132(a)(1)(B).

## II. STANDARD OF REVIEW

The parties agree that the arbitrary and capricious standard of review governs this case.[2] Where the plan at issue clearly confers discretion upon the administrator to determine eligibility or construe the plan's provisions, the Court reviews that determination under the "arbitrary and capricious" standard. *See Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 710 (6th Cir. 2000); *Wells v. United States Steel & Carnegie Pension Fund, Inc.*, 950 F.2d 1244, 1248 (6th Cir. 1991). The "'arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.'" *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (quoting *Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir. 1985)).

---

[2] The Sixth Circuit has directed that neither summary judgment nor a bench trial is the appropriate method for review of a denial of benefits under ERISA. *See Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 619 (6th Cir. 1998).

Under this standard, the Court must ask whether the administrator's determination was "'rational in light of the plan's provisions.'" *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)). The administrator's decision will be upheld "'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). In reviewing the administrator's determination, the Court may only consider the evidence available to the administrator at the time the final decision was made. *See Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996); *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990).

### III. ANALYSIS

The issue presented to the Court is whether Continental can offer a reasoned explanation, based on the evidence, for its judgment that Rose was not "disabled" within the terms of the Policy. *See Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002) ("[T]he ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious."). Under

the Policy, a policyholder is considered "totally disabled and eligible for benefits: . . . After the first twenty-four months of Benefit Payments, if, because of injury or sickness, he is continuously unable to perform the duties of any occupation for which he is reasonably qualified by education, training or experience."

A.   *Continental's Review of Rose's Claim*

Continental concluded that Rose was not "disabled" under the Policy after evaluating Rose's claim.  Rose completed a claimant questionnaire on July 29, 2004, and stated, among other things, that she had cognitive difficulties, she was unable to set a schedule of any kind, her fatigue had worsened, her fibromyalgia was affecting her arms and legs more, she was unable to stand for more than twenty or thirty minutes at a time, and friends and neighbors helped her to shop and keep up with her home.  She noted that on a good day she would do one household chore or go to the grocery.  Continental initially spoke with two of her treating physicians, Drs. Jeff Foxx and Mark Dougherty, and requested her medical records from her physicians.  Between August 3, 2004 and August 5, 2004, Rose was videotaped by an investigative company hired by Continental.  On August 4, 2004, Rose was observed at a convenience store, a veterinary clinic, a bank, and a grocery store.  She was observed entering, exiting, and operating her vehicle.  She was observed walking, standing, bending, squatting,

5

picking up objects, lifting objects, and carrying objects, including a 37.5 pound bag of dog food. On this date, she was away from her residence for approximately one hour and thirty minutes. On August 5, 2004, Rose was observed visiting two produce stands, two convenience stores, and several other businesses and residences. Rose was away from her residence running errands for approximately five hours.

Five months later, on January 6, 2005, a Continental investigator met with Rose, and Rose completed a continuing disability statement. In that statement, Rose explains that she is able to walk for fifteen to twenty minutes, she uses a case 40-50% of the time, she has a slow and limped gait, she cannot do two days of activities in a row, she can only shop for thirty minutes at a time, she can stand for a maximum of ten minutes, and she can only lift three to four pounds. Additionally, Rose noted that she will not do two activities in one day. Rose stated that she is physically limited in several ways; for example, she cannot squat, fully use her hands, use keys to open a door, or get in and out of her vehicle without difficulty.

In addition to reviewing Rose's statements about her level of functionality and the August 2004 video of Rose, in making its decision on Rose's claim, Continental reviewed her medical records and the notes of her treating physicians. Continental sought an independent medical review of Rose's records from Dr. Harvey A.

6

Popovich, in part, because her treating physicians would not comment on her ability to work. Continental relied upon Dr. Popovich's conclusion that the objective medical information does not support Rose's claim that she is incapable of performing full-time work activities. Continental conducted a vocational review that yielded several positions that it claims Rose can perform, including Psychiatric Social Worker, Substance Abuse Counselor, Assistant Manager of Customer Service, and Telephonic Customer Service Representative.

After Continental terminated Rose's benefits in April 2005, Rose sought reconsideration of that decision and submitted a letter and several letters from friends and neighbors supporting that request. At Continental's request and without the benefit of Dr. Popovich's opinion or report, Dr. James Bress reviewed her medical records. In her appeal, Rose attached a letter from her current treating physician, Dr. Joshua Huffman. Dr. Bress spoke with Dr. Huffman, who opined that based on Rose's description of her symptoms she could not function in any occupation. Dr. Bress determined that the medical evidence did not support a conclusion that Rose continues to be incapable of working.

Continental noted the discrepancies between the August 2004 video and Rose's own statements as to her level of activity. Continental compared her statement that she cannot do two days of activities in a row with the video footage showing her

7

participating in a range of activities over a two-day period. Continental compared her statement that she was unable to lift more than three to four pounds with video footage showing her lifting a 37.5 pound bag of dog food. Continental compared her statement that she was unable to squat with video footage of her squatting and bending while running errands. Continental compared her statement that she could not use keys and could not easily get into her car with video footage showing her doing both activities without visible difficulty. Continental compared Rose's statement that she has trouble concentrating due to her chronic fatigue syndrome with her ability to participate in a three and a half hour interview with an investigator without displaying any difficulty concentrating and with her written appeal letter which explains in detail her assessment of her limitations, complete with footnotes.

Based on the inconsistencies between Rose's statements regarding her symptoms and the video footage, along with her medical records and the reports of two physicians who reviewed those records and spoke to her treating physicians, Continental concluded that Rose had not shown that she is unable to perform "any occupation for which [she is] reasonably qualified by education, training or experience."

B.  *The Weight Given to the Opinions of Rose's Treating Physicians*

Rose complains that Continental should have given more weight to the opinions of her treating physicians than to those of the

physicians it hired to review her file. In general, a plan may not arbitrarily reject the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion. *Evans v. Unumprovident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006). The Policy itself provides that "[u]nder ordinary circumstances, determination of the degree of physical impairment caused by the disabling condition is made by your own physician." Continental claims that it relied more heavily on Dr. Popovich's and Dr. Bress's conclusions than on Rose's treating physicians' conclusions because (1) Dr. Dougherty would not comment on Rose's ability to work, (2) Dr. Foxx would not offer his assessment as to Rose's functional capabilities without specifically evaluating her, and (3) Rose began to see Dr. Huffman only after April of 2005, when Continental concluded that she was ineligible for disability benefits and he stated that he was reflecting Rose's symptoms and attempting to be a patient advocate. Furthermore, it is Rose's burden as the claimant to present evidence supporting her claim for disability benefits. Dr. Foxx's suggestion that Continental should set up an appointment for Rose does not require Continental to do so or somehow shift her burden to Continental. Continental noted that Dr. Huffman's letter of September 20, 2005, explained that his assessment of Rose's symptoms was based purely on her own subjective complaints.

C.  *Continental's Conclusions Based on the Inconsistencies Between Rose's Statements and Its Surveillance of Rose's Activities*

9

Rose maintains that Continental gave too much weight to the August 2004 video, which she asserts displayed examples of her good days and did not show the pain and fatigue she experienced on the following days. But Continental should not have to ignore the inconsistencies between Rose's assessment of her level of activity and the videotape of her activities over a two-day period in August of 2004. For example, Rose stated that on her "best" day she can shop for no more than thirty minutes and that if she does, she will be "down" the following day. But the videotape contradicts this statement and shows two consecutive days of activity by Rose in which she exceeded her thirty-minute limit by more than an hour on one day and four hours on another day. Continental's conclusions based on this and other contradictions is simply another factor the Court considers in its overall assessment of whether Continental acted in an arbitrary and capricious fashion.

D.  *Continental's Failure to Require Rose to Submit to a Physical Examination*

Rose complains that Continental acted improperly when it failed to have her physically examined before terminating her benefits. The Policy provides that Continental "at its own expense shall have the right and opportunity to examine the person of the Insured when and as often as it may reasonably require during the pendency of a claim hereunder." In *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286 (6th Cir. 2005), the Sixth Circuit reviewed similar language in a long-term disability policy and held that although a

10

provision *allows* an insurer to physically examine a claimant, "there is nothing in the plan language that expressly bars a file review by a physician in lieu of such a physical exam." *Id*. at 295. Rose presents an identical argument, and while the language in the Policy clearly allows Continental to require Rose to submit to a physical examination, it does not prevent Continental from denying benefits without one.

E.  *Continental's Decision to Rely More Heavily on the Reports of Its Own Hired Physicians and Investigators Than on Letters Submitted by Rose*

In her memorandum, Rose suggests that Continental acted in an arbitrary and capricious manner by relying on the reports of hired, and therefore biased, individuals and by giving no weight to the appeal letter written by Rose or the letters submitted by Rose's friends and neighbors. Rose's letter recounts in detail her history of medical problems and explains her understanding of the inconsistencies between the video and her statements regarding her disability. In its December 7, 2005, letter denying Rose's appeal, Continental specifically lists Rose's appeal letter and all five letters from Rose's friends and neighbors as documents that it considered. Continental acknowledged Rose's medical problems, but explained that a diagnosis and continued treatment of fibromyalgia and chronic fatigue syndrome does not establish that she is "disabled" under the terms of the Policy. The December 7, 2005, letter does not show that Continental ignored Rose's description of

11

her medical problems, it shows that Continental did not conclude that these problems prevent her from engaging in sedentary work. Continental discounted the letters from Rose's friends and neighbors because they "are not clinicians [who] can provide documented medical data on physical/clinical examinations that would support your self-reported complaints and further that would support your inability to perform any work activity." Giving more weight to the opinions of physicians than the opinions of Rose's friends and neighbors does not represent arbitrary and capricious behavior on Continental's part.

F.   *Rose's Report of Her Symptoms*

Rose argues that Continental did not give sufficient weight to how her diseases, chronic fatigue syndrome and fibromyalgia, limit her ability to function. Yet in her appeal letter, Rose states that her physicians have never restricted her activities. It is reasonable for Continental notice this contradiction and to conclude that although Rose no doubt suffers from chronic fatigue syndrome and fibromyalgia, she has not shown that those diseases prevent her from working in "any occupation for which [she is] reasonably qualified by education, training or experience."

G.   *Rose's State Law Claims Are Preempted by ERISA*

Continental argues that all of Rose's state law claims are preempted by ERISA. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."

12

29 U.S.C. § 1144(a). A state law "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). Rose does not offer any argument in response to this conclusion.

> Rose sets forth the following state law claims:
>
> 25. The Defendants arbitrarily and abruptly terminated Plaintiffs Long Term Disability Benefits and did not attempt in good faith to effectuate a prompt, fair and equitable settlement of her claim for which liability was reasonably clear.
> 26. Defendants acted in bad faith and violated Kentucky's Unfair Claims Settlement Act, K.R.S. § 304.12-300(4) and (6).
> 27. The Defendant's [sic] arbitrary breach of contract by terminating Plaintiff's Long Term Disability Benefit payments without a reasonable investigation based on all available information demonstrates that the Defendants acted with reckless disregard for the rights of Plaintiff under the policy and acted toward her with oppression, fraud, or malice.
> 28. The Defendant's [sic] failure to attempt in good faith to effectuate a prompt, fair and reasonable settlement of Plaintiff's claim for which liability was reasonably clear demonstrates that the Defendants acted with reckless disregard for the rights of the Plaintiff under the policy and acted toward her with oppression, fraud or malice.
> 29. Plaintiff has experienced anxiety and mental anguish, as a consequence of the bad faith of the Defendants for which she is entitled to recover compensatory damages.

All of these claims arise out of the administration of Rose's long-term disability insurance plan; therefore, Rose's state law claims are preempted by ERISA. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57 (1987); *Caffey v. UNUM Life Ins. Co.*, 302 F.3d 576, 582 (6th Cir. 2002); *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991).

<mark>IV. CONCLUSION</mark>

## IV. CONCLUSION

Examining the administrative record for actions or omissions by Continental that cast doubt on the adequacy of its evaluation of Rose's claim, the Court cannot conclude that Continental acted in an arbitrary and capricious manner when it terminated Rose's long-term disability benefits. Continental never disputes that Rose suffers from serious and painful medical problems. But Rose, as the claimant of long-term disability benefits, is only considered totally disabled and eligible for those benefits if she is continuously unable to work in any occupation for which she is reasonably qualified. Continental has offered a reasoned explanation, based on the evidence, for its decision that Rose is not totally disabled and Rose's arguments to the contrary are not persuasive.

Accordingly, and for the foregoing reasons, **IT IS ORDERED** that Continental's denial of benefits to Plaintiff Elizabeth Rose be, and the same hereby is, **AFFIRMED**.

This the 8th day of March, 2007.



Signed By:

*Joseph M. Hood*

United States District Judge

<mark>14</mark>